FILED
FEB 2 2026
Clerk U.S. District Court
Northern District of Ohio

RECEIVED
JAN 21 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

Case: 5:25-cr-00176
5:25-cr-00214
Judge: Christopher A. Boyko

GRANT T. WILCOX,

Defendant.

## DEFENDANT'S MOTION TO VACATE BOND MODIFICATIONS AND DISMISS REVOCATION

Defendant Grant T. Wilcox, pro se, moves pursuant to 18 U.S.C. §§ 3142(c)(3), 3145, 3148, and the Court's inherent authority to vacate the June 16, 2025 orders modifying release conditions (Doc. 17 in 5:25-cr-00176; Doc. 14 in 5:25-cr-00214), vacate any orders from the July 21, 2025 hearing, and dismiss the revocation proceeding scheduled for January 26, 2026.

**Grounds:** The modifications and revocation proceedings were initiated solely by U.S. Pretrial Services reports rather than by the attorney for the Government as required by 18 U.S.C. § 3148(b), thereby bypassing mandatory statutory requirements and due process protections under the Bail Reform Act.

## I. RELEVANT STATUTORY FRAMEWORK

***18 U.S.C. § 3142(c)(3)*** authorizes the judicial officer to "amend the order to impose additional or different conditions of release" at any time.

***18 U.S.C. § 3145(a)(1)*** provides that if a person is ordered released by a magistrate judge, "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." This

language parallels § 3148(b) and demonstrates Congress's consistent assignment of initiation authority to the attorney for the Government.

***18 U.S.C. § 3148(b)*** states: "The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court."

Pretrial Services officers, under 18 U.S.C. § 3154(5), supervise defendants, report apparent violations to the court and the attorney for the Government, and may recommend modifications. However, they lack authority to initiate formal revocation proceedings. Fed. R. Crim. P. 1(b)(1) defines "attorney for the government" exclusively as prosecutors: the Attorney General, United States Attorney, and their authorized assistants.

The statutory scheme is clear and consistent: across §§ 3145(a)(1) and 3148(b), Congress assigned authority to initiate proceedings affecting release conditions exclusively to the attorney for the Government. Pretrial Services may inform and recommend under § 3154(5), but this informational role does not include initiation authority. Congress is presumed to know the law when it enacts legislation, and its repeated use of "the attorney for the Government" to describe who may initiate these proceedings must be given effect.

## II. STATEMENT OF FACTS

On April 22 and May 16, 2025, Magistrate Judge Knapp ordered the Defendant released on $20,000 unsecured bonds with standard conditions. The Defendant's original release conditions did not include any drug testing requirement.

On May 16, 2025, Officer Cierra Motley requested that the Defendant provide a urine sample despite having no court order or other legal authority to compel one. When the Defendant questioned the basis for this request, Officer Motley implied that the Defendant would be held over the weekend to appear before the judge if he did not comply. Faced with this threat of

immediate detention without any court order authorizing such action, and without the benefit of counsel, the Defendant provided a sample he had no legal obligation to provide.

The Defendant objected in real time. In text messages sent to Pretrial Services on May 16, 2025, the Defendant stated: "I want to respectfully document that my bond conditions do not include any drug testing requirement, and there is no court order in place requiring me to test. I complied with the test only because I was told that if I refused, Pretrial would ask the judge to order one. That felt coercive to me." (Exhibit B). The Defendant further stated: "I did not voluntarily consent to drug testing, and I request that this be reflected in any report or internal documentation." (Id.) Pretrial Services acknowledged receipt of these objections but proceeded to use the test results as the basis for the June 16, 2025 modification request anyway.

On June 16, 2025, Pretrial Services Officer Armonty Bennett filed "Release Status Report / Summons Request" forms in both cases recommending drug testing and treatment conditions. (Doc. 17 in 5:25-cr-00176; Doc. 14 in 5:25-cr-00214). Judge Boyko adopted the recommendations and modified the bond conditions without a hearing and without any motion from the Government.

Officer Bennett's July 10, 2025 letter to defense counsel confirms the modifications stemmed from "this Officer's request," not prosecutorial action. The letter states: "On June 16, 2025, this Officer completed a PS38 Modification request for purposes of requesting a summons" and "[a]n entry was placed on the docket from Your Honor granting this Officer request to modify the defendant's bond conditions without a hearing." (Exhibit A). Notably, Officer Bennett was not present on May 16, 2025 and had no personal knowledge of the circumstances surrounding the drug test that formed the basis for her modification request.

Critically, Officer Bennett's letter confirms that the Defendant disclosed his prescription for Amphetamines before the May 16, 2025 drug test: "The defendant advised he would be positive for Amphetamines, but only due to prescriptions. He also agreed to bring documentation of those exact prescriptions for proof." (Exhibit A). However, the June 16, 2025 PS38 form (Doc. 17) makes no mention whatsoever of this prescription disclosure. Instead, the PS38 form attributes to the Defendant a statement that he "admitted to using a suboxone strip the night before and he does not have a prescription." The Defendant made no such admission. The PS38 form also claimed the Defendant failed to appear for a drug test, yet no drug testing requirement existed in the Defendant's bond conditions, making it impossible to "fail to appear" for something never ordered. The PS38 form reported positive results for "Amphetamine, Methamphetamine and Buprenorphine," yet prescription amphetamine medications are known to produce positive results for both Amphetamine and Methamphetamine on standard drug screens. By omitting the Defendant's prescription disclosure, attributing to him an admission he never made, and claiming he failed to appear for a nonexistent requirement, the PS38 form presented a materially misleading picture to the Court. This further demonstrates why ex parte modifications without opportunity for the Defendant to be heard violate due process. Because the May 16, 2025 drug test was obtained without any court order or legal obligation to submit, and because the Defendant's contemporaneous objections were disregarded, the June 16, 2025 modification lacks a valid factual basis and should be vacated.

The July 21, 2025 hearing and the January 6, 2026 report recommending revocation (Doc. 32) were likewise initiated solely by Pretrial Services, without any motion from AUSA Peter Daly or any other attorney for the Government. No motion by the attorney for the Government appears on the docket initiating the July 21, 2025 proceeding. Just as with the June

16, 2025 modification, Pretrial Services drove the process while the prosecutor remained passive. Officer Bennett's July 10, 2025 letter confirms that it was "this Officer request" that resulted in the bond modification, not a Government motion. (Exhibit A). A summons was issued on January 7, 2026 (Doc. 34) scheduling a revocation hearing for January 26, 2026, and no motion by the attorney for the Government appears on the docket initiating that proceeding.

## III. ARGUMENT

### A. Revocation Proceedings Require a Government Motion.

Section 3148(b) vests exclusive initiation authority in "the attorney for the Government" who "may initiate a proceeding for revocation . . . by filing a motion." 18 U.S.C. § 3148(b). Pretrial Services reports inform the Court and the prosecutor of violations under 18 U.S.C. § 3154(5), but they do not substitute for the required Government motion. The statute is unambiguous: revocation proceedings must be initiated by the attorney for the Government filing a motion, not by Pretrial Services filing a report. This Court should follow that plain statutory text.

Section 3145(a)(1) reinforces this interpretation. That provision authorizes "the attorney for the Government" to file "a motion for revocation of the order or amendment of the conditions of release" when a person has been ordered released by a magistrate judge. 18 U.S.C. § 3145(a)(1). Read together, §§ 3145(a)(1) and 3148(b) demonstrate Congress's consistent and deliberate assignment of initiation authority to the attorney for the Government. The repeated use of this specific phrase across multiple provisions cannot be dismissed as mere coincidence; it reflects a considered legislative judgment about who bears responsibility for initiating proceedings that affect a defendant's liberty.

The Sixth Circuit has held that "[t]he default position of the law . . . is that a defendant should be released pending trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010). The Bail Reform Act's procedural requirements exist to protect this liberty interest. Those protections are nullified when revocation proceedings are initiated by Pretrial Services rather than by the Government through proper motion.

The July 21, 2025 hearing and the January 26, 2026 scheduled proceeding lack proper initiation under § 3148(b) and must be dismissed. At no point did the attorney for the Government file the motion required by statute to initiate these proceedings. The pattern is consistent: Pretrial Services files a report, the Court acts, and the Defendant is summoned to a hearing, all without the Government ever filing the motion that § 3148(b) requires. This is not a mere technicality. The requirement that the "attorney for the Government" initiate revocation proceedings "by filing a motion" exists to ensure prosecutorial accountability and to provide the defendant with notice of the specific allegations against him. When Pretrial Services initiates proceedings without a Government motion, the defendant is deprived of these protections.

To the extent the July 21, 2025 hearing resulted in any "waiver" or "admission" by the Defendant, such statements were made in a proceeding that was never lawfully initiated under § 3148(b) and cannot cure the Government's failure to comply with Congress's express statutory command. A defendant's participation in an improperly initiated proceeding does not confer authority on Pretrial Services that Congress withheld from them, nor does it relieve the Court of its obligation to ensure that revocation proceedings are commenced in accordance with governing law.

**B. The Modifications Were Not Independent Judicial Action.**

Although § 3142(c)(3) permits a judicial officer to amend release conditions, the June 16, 2025 orders were not the product of independent judicial determination. The Court ratified Pretrial Services' specific recommendations without independent findings and without any opportunity for the Defendant to respond. Officer Bennett's letter confirms the modification resulted from "this Officer request," not from the Court's own initiative. Even if § 3142(c)(3) permits sua sponte amendment, the record here shows the Court acted on a Pretrial Services request and recommendations without adversarial process. This is not independent judicial initiation but ratification of an unauthorized modification driven by an agency lacking statutory authority to initiate such proceedings.

The Government may contend that § 3142(c)(3) provides independent authority for the Court to modify conditions at any time, rendering the initiation requirements of § 3148(b) inapplicable. This argument conflates two distinct statutory provisions serving different purposes. Section 3142(c)(3) addresses the Court's authority to modify conditions; § 3148(b) addresses revocation proceedings. More fundamentally, even if § 3142(c)(3) permits modification without a Government motion, it does not authorize modifications based on reports from an officer who omits material information and attributes false admissions to the Defendant.

This delegation of the modification decision to Pretrial Services undermines the Bail Reform Act's liberty protections. As the Supreme Court stated, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). When bond conditions are modified based solely on Pretrial Services' request without adversarial process, the defendant is deprived of the procedural safeguards that the Act provides.

**C. The Ex Parte Modification Violated Due Process, § 3142(h), and the Least Restrictive Requirement of § 3142(c)(1)(B).**

Adding substantive conditions such as drug testing and treatment without notice, hearing, or adversarial process deprived the Defendant of liberty without due process of law. See Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (recognizing that revocation proceedings require "minimum requirements of due process" including written notice, disclosure of evidence, and opportunity to be heard).

Moreover, 18 U.S.C. § 3142(h) mandates that in any release order issued under subsection (c), the judicial officer "shall" (1) "include a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct" and (2) "advise the person" of the penalties and consequences of violating a condition. 18 U.S.C. § 3142(h)(1)–(2) (emphasis added). The use of "shall" makes this requirement mandatory, not discretionary.

The statute requires the judicial officer to "advise the person" of the conditions and consequences. The word "advise" means to give information or notice directly to an individual. It does not mean "file on the docket" or "make available for public inspection." Congress chose the word "advise" deliberately, and courts must give effect to that choice. When the Defendant appeared for his initial release on April 22, 2025 and May 16, 2025, the Magistrate Judge advised him directly and in person of the conditions of his release and the consequences of violation. That is what the statute contemplates.

The June 16, 2025 modification violated § 3142(h) because no one advised the Defendant of anything. There was no hearing. There was no direct communication. The Defendant was not present when the order was entered. The first notice the Defendant received was when the

modified order appeared on the Court's electronic docket. Posting an order on CM/ECF does not satisfy the statutory command to "advise the person." Advisement requires direct communication contemporaneous with imposition of conditions, not constructive notice after the fact. The statute requires direct communication to the defendant, which did not occur.

The ex parte modification also violated 18 U.S.C. § 3142(c)(1)(B), which requires that any conditions of release be "the least restrictive further condition, or combination of conditions" that will reasonably assure the defendant's appearance and the safety of the community. This determination requires an individualized assessment of the defendant's specific circumstances. See United States v. Arzberger, 592 F. Supp. 2d 590, 601 (S.D.N.Y. 2008) (emphasizing that pretrial release conditions require individualized judicial determinations). Without a hearing, the Court could not conduct the individualized assessment that § 3142(c)(1)(B) requires.

Had the Court conducted a hearing, the Defendant could have presented evidence that: (1) he had successfully complied with his original conditions, which did not include drug testing; (2) he disclosed a prescription for Amphetamines before the May 16, 2025 drug test, information that Pretrial Services materially omitted from its PS38 report (compare Doc. 17 with Exhibit A); (3) he is a federal employee currently suspended indefinitely without pay, creating severe financial hardship; and (4) the costs of compliance with the more restrictive conditions would be difficult to bear given his employment status. None of this information was before the Court when it entered the modification order.

The Bail Reform Act's procedural requirements and "least restrictive" mandate are not mere formalities. They reflect Congress's determination that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). When a court imposes more restrictive conditions without

any opportunity for the defendant to be heard, without advising him of the new conditions, and without conducting an individualized assessment, it cannot fulfill its statutory obligations. The June 16, 2025 modification must be vacated.

**D. The Modification Rests on an Invalid Factual Predicate and Must Be Vacated.**

The Defendant's original conditions of release, set on April 22, 2025 (Case No. 5:25-cr-00176) and May 16, 2025 (Case No. 5:25-cr-00214), did not include any drug testing requirement. Nevertheless, on May 16, 2025, Officer Cierra Motley requested the Defendant provide a urine sample despite having no court order or other legal authority to compel one. When the Defendant questioned the basis for this request, Officer Motley implied that the Defendant would be held over the weekend to appear before the judge if he did not comply. The Defendant had no legal obligation to submit to drug testing under his release conditions. He objected in writing that same day, stating he "did not voluntarily consent" and requesting the results not be used. (Exhibit B). Pretrial Services disregarded these objections.

The drug test results obtained under these circumstances constitute an invalid factual predicate for any subsequent governmental action. The results were the sole basis for the June 16, 2025 modification request. Officer Bennett, who signed the modification request, was not present on May 16, 2025 and had no personal knowledge of the circumstances under which the sample was obtained. Moreover, the PS38 form omitted the Defendant's prescription disclosure and attributed to him an admission he never made. Because the factual predicate for the modification is invalid, the modification itself cannot stand. A court order resting entirely on evidence obtained without legal authority, and based on a report that omits material information and contains false attributions, lacks the foundation necessary to support the deprivation of the

Defendant's liberty interests. The June 16, 2025 modification and all subsequent proceedings based upon it must be vacated.

## IV. RELIEF REQUESTED

**WHEREFORE,** the Defendant respectfully requests that this Court:

1. Vacate the June 16, 2025 modification orders (Doc. 17 in 5:25-cr-00176; Doc. 14 in 5:25-cr-00214);

2. Vacate any orders entered at or following the July 21, 2025 hearing for lack of lawful initiation under § 3148(b);

3. Dismiss the revocation proceeding scheduled for January 26, 2026 without prejudice to the Government's right to properly initiate such proceedings by filing a motion as required by 18 U.S.C. § 3148(b);

4. Restore the Defendant's original conditions of release; and

5. Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

**/s/ Grant T. Wilcox**
Grant Wilcox, pro se
9858 Green Drive
Windham, OH 44288-1419
330-990-5416
grant.wilcox@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he served a true and accurate copy of the above **DEFENDANT'S MOTION TO VACATE BOND MODIFICATIONS AND DISMISS REVOCATION** on the AUSA Peter E. Daly, via electronic mail (Peter.Daly@usdoj.gov) on January 20th, 2026.

**/s/ Grant T. Wilcox**
Grant Wilcox, pro se